Good morning, and may it please the Court. Jordan Grotzinger, pro bono counsel for Pierre Rushing. Counsel, thank you, on behalf of the Court, for appearing pro bono to represent Mr. Rushing. You're very welcome. May I please have three minutes or so for rebuttal? Yes, Counsel, but please be reminded that the time shown on the clock is your total time remaining. Understood. Thank you. This is the case that illustrates objective unreasonableness more than any other published case interpreting Subdivision D-2 of ADPA. This is the case that gives that statute meaning while confirming the high bar necessary to meet it. This is the case where the State Court itself recognized the, quote, highly prejudicial effect and, quote, unmistakable danger of improperly admitting the uncharged shooting, but then unreasonably determined that the only witness, a seven-time felon, serial crack abuser, high at the time, who changed his description by six inches, 100 pounds, and skin color, who identified Mr. Rushing three weeks late, was credible enough to render the improper admission, the admittedly improper admission, insufficiently prejudicial in a case with no physical evidence at all. There is your objective unreasonableness. It is practically on the face of the Court of Appeal opinion in its direct self-contradiction. There is your high bar confirming that factual determinations have to be this bad to make this showing. So is it, in your view, an unreasonable application of law or fact or both? With respect to the uncharged shooting, I am arguing under D-2 an unreasonable determination of the facts. I am not arguing under D-1 with respect to the uncharged shooting. The State Court here unreasonably determined the facts. It does so under the law. But what was the actual unreasonable determination, that it was harmless? The unreasonable determination was that the single witness, Mr. Green, with all those flaws, was credible enough to render the uncharged shooting insufficiently prejudicial. That is the unreasonable determination. So the difficulty with that concept is that the jury heard the testimony, and his credibility was attacked, but nevertheless there was a conviction. You think it was only because of the additional evidence of the uncharged shooting? Yes. Two points, Your Honor. One, it is the Court of Appeal's job to determine on the whole record whether the facts were unreasonably determined. And here the conviction was based on three things. Mr. Green, who is an almost comically weak witness, without him there is no case, there is no conviction. That's the difficulty, is that the jury heard him, the jury heard all of his flaws, and nevertheless convicted. But it's up to the court to determine whether the facts were unreasonably determined, not the jury. I understand, but we do it against a backdrop of what was presented in the court and what the jury did with that evidence, because that's part of the equation as well. Understood. And to your point about whether the uncharged shooting made a difference, the conviction was based on three things, Mr. Green's testimony, the uncharged shooting, and Mr. Rushing's testimony, which he shouldn't have had to give because he shouldn't have had to deny that uncharged shooting. You take the uncharged shooting out of that case, and it is a very different case that goes to the jury. Are you saying Mr. Rushing, he testified? Yes. Are you saying he only testified to rebut the uncharged shooting, or he testified more broadly? Candidly, I can't get in his head. I don't believe he would have testified if the uncharged shooting was admitted or wasn't admitted. But the fact is he did. And there were some issues regarding the alibis. So that was part of the evidence as well. The alibis that were posited by Mr. Rushing were also a part of the evidence. So we have to look at all of the evidence. Agreed. And under D-2, we submit that the court was unreasonably selective by minimizing the gross weaknesses in the evidence and giving weight to the ostensible positives when all the evidence was Mr. Green, the uncharged shooting, and Mr. Rushing's testimony, who never admitted he did the crime. There were some inconsistencies like he didn't tell the police. He made a mistake about where he was on April 15th because he didn't know they were talking about the middle of the night. I mean, these are not the kind of things that should push the case to guilt given the other evidence. How much of the trial was devoted to the uncharged offense? If you could put some numbers down in terms of percentage of time, number of witnesses, in comparison to the rest of it. Three witnesses. The cross of Rushing and several mentions in the closing argument. Okay, but the trial was how long total? It was, I believe, about five days. My counsel, Judge Gould, if I could interject a question just to make sure I understand this. You're claiming there was an unreasonable determination of fact as opposed to an unreasonable determination of the law. That is correct, Your Honor, with respect to the admission of the uncharged shooting. And what precisely is the fact that was determined that was unreasonable? That Mr. Green's credibility, given that he was high on crack, used over 100 times, four to six times a day, was high at the time, changed his description of Mr. Rushing by 6 inches, 100 pounds, and skin color, and identified the shooter three weeks late? The unreasonable determination of the facts was that he was credible enough to render the admission of the uncharged shooting insufficiently prejudicial, even though the court said in the same breath that it was highly prejudicial and there was a, quote, unmistakable danger that it would be used for its improper propensity purpose. Going back to the question raised by Judge Rollinson, if that issue was before the jury, then can we still make the ruling that you'd like us to make? Absolutely. Under D-2, it is the court's job to look at the whole record and decide whether the determination of the fact was reasonable or not. Okay, thanks, counsel. Thank you. Counsel, I'm looking at your brief, and I don't see this precise argument made in your brief. It is there, Your Honor. Where is it? The argument that there was an unreasonable determination of fact due to the credence given to the witness's testimony, where is that in your brief? Right, I'm looking for the site. Oh, it's page 15 of our reply brief and 24 of our opening brief. Page 24. Let's go to page 24 of your opening brief, because you cannot raise new issues in the reply brief. So let's go with where in there do you say there was an unreasonable determination of the fact by the California Court of Appeal? I'll show you, Your Honor. All right. I'm there on that page, and I don't see it. Okay. I'm sorry, on page 20. The court's credibility and no prejudice determinations were patently unreasonable under 28 U.S.C. 2254 D2. Okay, but you didn't tell us it was because of the credibility that was afforded to the witness's testimony and how that related to the uncharged conduct. So I think you're making a little different argument here than you made in your brief, because this is kind of a passing reference and very general, but you're making a very specific argument here today that's not really fleshed out in your brief. With respect, Your Honor, I believe if you look at pages 20 through 24, it does focus on the credibility of Green, and that's what our D2 argument is about. It is our primary argument that he was not credible enough, and that is why the admission of the propensity evidence did not support a constitutionally permissible inference. It seems like it could be reframed as a legal claim, too, because we're really talking about a prejudice inquiry. Your Honor, case law in the Ninth Circuit looks at this issue under D2, where the court minimizes weaknesses in evidence. In Kipp, for example, where a prior unadjudicated murder was admitted, the court found that the court unreasonably determined the facts because the crimes weren't similar enough, and therefore it didn't support a constitutionally permissible inference going to intent or identity. In Zapata, the court looked at D2 to look at the prejudice issue and determined that despite the relatively weak ID evidence of Zapata, the court unfairly gave weight without evidentiary support to certain other identification evidence, and that was an unreasonable determination of the facts. In McKinney, the court looked at prejudice under D2, holding that the possession of knives by itself didn't give rise to a permissible inference that that defendant committed a crime with a knife. So there is ample case law in the Ninth Circuit that decides this issue under D2, and where it's framed under D2, we submit that these facts support the analysis here. Wasn't McKinney a due process case? Yes, and this is, too. So it's a due process case rather than unreasonable determination of the facts case? Well, it's both. The way the law works is if the court unreasonably determines the facts, the issue of whether that violated due process is reviewed de novo, and then you go to the four-factor test in KIPP for unfairness and prejudice. Well, but when Judge Bress asked you about the prejudice argument, you said it was not that, that it was an unreasonable determination of the facts scenario. It is both. In all of those cases, the court held that there was an unreasonable determination of the facts under D2 and then got to the due process question, because the law is KIPP says this, Rodriguez says this. If the court determines that the facts were unreasonably determined under D2, then the question becomes, did that violate due process? And that question is reviewed de novo, which I would like to address. So to, let me speed up here. The government, so the evidence doesn't support any constitutionally permissible inference. It was improper propensity evidence. The state court recognized this in recognizing the unmistakable danger that the jury would interpret the evidence to show Mr. Rushing's propensity to shoot others. Now, the government argues two inferences under state law, but that is not the test. Recognizing that state rules may countenance processes that are not fundamentally fair, this court says in Jamal that the absence of a state law violation is largely beside the point, and whether an evidentiary ruling is sound depends on whether the state proceedings satisfy due process. So what matters is whether the admission of the evidence supports a constitutionally permissible inference, and this is key. Where other acts' evidence is minimally probative or largely irrelevant, it does not support a permissible inference. Thus. Counsel, let me ask you this. You know that on Habeas Review, you have to have a clearly established federal law, which is not Ninth Circuit authority, but Supreme Court authority. So what Supreme Court case are you relying upon to support your argument? None, Your Honor, because I'm not arguing under D-1. ADPA Section 2254 specifically allows us to argue under D-1, which is the standard you just articulated, or, keyword being or, D-2. That's why you're doing D-2? Exactly. Okay. So I'm almost out of time. I'd like to tell you why this case meets that test. What matters is whether the evidence supports a constitutionally permissible inference, and where the other acts, if this court says whether other acts' evidence is minimally probative or largely irrelevant, it doesn't support a permissible inference. So in this case, we submit that the admission of propensity evidence to show the defendant's criminal intent supports no constitutionally permissible inference when, one, the intent was not disputed at trial, and, two, the intent was not reasonably subject to dispute. That's this case here. In these circumstances, there is an extremely high and unacceptable risk that the propensity evidence will be used for its forbidden purpose. And this is a narrow rule as framed. It doesn't raise gamesmanship or floodgate concerns. Any defendant with a legitimate intent defense will raise it at trial, necessarily taking himself out of the rule. Moreover, any defendant with a frivolous intent defense who raises it at trial also will take himself out of the rule because it only applies where it's not raised at trial. This case falls squarely within that test, and the admission of the uncharged shooting, I apologize for my speed talking, I see the clock, rendered the trial fundamentally unfair. The KIPP factors are all satisfied. The balance of the case was circumstantial. The other crime was similar to the crime at issue. The prosecution relied on the other crime repeatedly, as I mentioned, and the other crime evidence was emotionally charged. As to actual prejudice, the state court itself admitted that propensity evidence was highly prejudicial, and this court finds actual prejudice from the unconstitutional admission of propensity evidence where the other ID evidence is weak. I see my time is up. May I have a minute to wrap up? You may have two minutes on rebuttal, so we'll give you time for rebuttal. Thank you, Your Honor. All right, thank you. Your Honors, may it please the Court, Basil Williams for Respondent Appellee. Your Honors, responding firstly to Appellant's last point just now. Appellant says that there is no concern for floodgates or this is not very groundbreaking, but it actually is, Your Honors. And I would argue that the very fact that they are not arguing under D-1 means that they have conceded, if D-1. As it relates to D-2, Your Honor, to use D-2 as a mechanism through which you not only review the facts from the trial court as determined by the jury, you then use that as a gateway to get to a due process claim and review that due process claim de novo. Well, his argument is that because there was an unreasonable determination of the facts that we do review de novo. So what's your response to that, the argument that there was unreasonable determination of the facts by the California Court of Appeal? Well, Your Honor, that argument is premised on Appellant's reliance on Kip and Zapata from this Court. And looking at Kip and Zapata, it is easy to distinguish both cases from this case, Your Honor. Firstly, let's take Kip for example. In Kip, the court described the state court's ruling as plainly misstating the record, identified contradictions. It said it was completely disregarded the differences in terms of the facts and completely failed to acknowledge key pieces of evidence that benefited the defendant. In Zapata, similarly, the court went through a list of clearly contradictory findings in the record compared to the state court's characterization of the evidence. So for example, in Zapata, in one instance, the court, the appellate court noted that there was a limited possibility or universe of suspects because it was only focused on one gang. The record clearly stated that several gangs were involved. That right there is the state court describing something as X and the record showing that it is in fact Y. Kip arose under, or the circumstances under Kip are very similar where the appellate court describes it as X, the record contradicts it directly and shows it as Y. Stepping back from Kip and Zapata and looking directly at this case, Your Honors, that is not what we have here. In this case, appellant primarily argues that the court downplayed inconsistencies in Green's testimony and that it softened the drug use finding. Firstly, with the inconsistencies in the testimony, the Court of Appeal clearly outlined those inconsistencies but then showed that Green himself affirmed that he was 100 percent certain that appellant is the one who committed the crime. That is not a case of the record saying X and the Court of Appeal's characterization of it being Y. That is not what is happening here. All right. Next, for the drug use. The Court of Appeal. You're just, you're saying, this is somewhat getting at some of the questions I was asking your opposing counsel. I think you're saying that all of the underlying findings here, there was nothing incorrect about them. In other words, you know, who said what and who saw what, that's all accurately stated. The question is, how do you weigh those things against the prejudice of the other crime? And the Court of Appeals reached a certain judgment on that. And that was sort of along the lines of the question I had is, is this really a factual question or is it really more a legal one because the underlying facts are what they are? Yes, Your Honor. We agree with that position. Our position is that it is not a factual issue. It was a prejudice determination, which we submit as a legal question, Your Honor, but. Which would then get you into D-1. Right. And under D-1, appellant has already conceded that the claim fails under D-1. But wasn't it certified as a D-2 claim? The certificate of appealability, was it for D-1 or D-2? I'm not certain, Your Honor. I can double check. That's all right. You don't have to check. I thought it was certified as a D-2, but I'll double check. Yes, Your Honor. But even if it were certified under D-2, it clearly fails based on this own. In fact, what appellant is essentially inviting the court to do goes beyond the pale. It's beyond KIPP. It's beyond Zapata. It is asking this court, in those cases where there were clearly contradictory findings by the appellant court, and in here, appellant does not assert any contradictory findings. So whether this is D-1 or D-2, we have the issues with credibility of the main witness. We also have this other crime, which the Court of Appeals here said was highly prejudicial and probably should not have come in. And so what is the evidence that was presented at trial that you think shows that appellant here committed this murder? Well, Your Honor, the credibility determination was before the jury. And also, Green's testimony was corroborated by the video camera evidence. It was corroborated by Carla Smith's testimony that helped. Even though they didn't identify a shooter, it did help to lend support to how Green described the crime as happening. The Court of Appeal also determined that Green, when presented with a photo lineup of possible suspects, said no because appellant's photo was not within that lineup. Subsequently, he then saw appellant and contacted the police and informed them that he saw the person who was responsible. And Green had had prior dealings with appellant? Yes, he had two prior dealings, at least two prior dealings with appellant. And this appellant was someone who was already known to him. What were the nature of the prior dealings? Drug transactions, Your Honor, according to the record. And, Your Honor, even though Green's description of appellant changed, the Court of Appeal also noted this distinction. It said that Green was sitting at the time and that accounted for the difference. But in any event, Green affirmed that he was 100% certain that appellant committed the crime and was the shooter. And even under this Court's precedent, under KIPP, Your Honor, the relevant question is whether after surveying the entire land, whether any appellate court could find that factual determination unreasonable. And I don't believe, Your Honor, on this record it can be said that the factual determination or the Court of Appeal's characterization off the record was unreasonable. Do you contend that it was proper for the prior crime to be brought in here? For the other crime, excuse me? Or the other crime evidence? Yeah, the other act evidence. Yeah. Are you arguing that that was permissible? No, Your Honor. The Court of Appeal reviewed it and determined that it was not permissible and it should not have been admitted. Counsel, I see the CLA. It was not certified as D1 or D2. The issue was whether the trial court's admission of the other crime's evidence and its accompanying jury instruction violated appellant's due process rights, including whether any error was harmless. That was the issue we certified. I'm guided. Thank you for that, Your Honor. So, Your Honors, to rule as appellant urges would be to go beyond KIPP. And, Your Honors, that is just simply not – this claim is not a D2 claim. This case is not similar to KIPP or Zapata. This claim should properly be adjudicated under D1. And under D1, as appellant concedes, this claim fails. Unless I can be of further assistance to the court, our position is that the district court got it right and that the district court's judgment should be affirmed. All right. Thank you, Counsel. Thank you, Your Honors. Let's have two minutes for rebuttal. Thank you. Thank you, Your Honor. In this case, the government, unable to find a persuasive way to argue that the self-contradictory finding by the appellate court is objectively reasonable, transmutes its argument into a D1 argument, even though that was never our argument. And the idea that D2 doesn't apply is a bald conclusion and unsupported. The law is that where there is an unreasonable determination of the facts, D2 applies. It's what KIPP says. It's what Zapata says. It's what Lineweber says. It's what Harvey says. And the one case the government cites, I believe in a footnote, to say that they think D1 is more appropriate because they can't think of an objectively unreasonable argument, is Brown. Brown wasn't a D2 case. And the court acknowledged that the appellant there only sought relief under D1. It couldn't be clearer that the law allows this panel to review this question under D2. Your Honor, you asked about the de novo question and whether KIPP and its progeny provide that upon a determination of unreasonable determination of the facts, de novo review applies. You didn't really get an answer. What you got were distinctions without a difference about the facts of KIPP when the law is that, quote, once we have concluded that the state court's decision was based on an unreasonable determination of the facts under 28 U.S.C. 2254 D2, we review the legal issues de novo, close quote. That's Rodriguez and KIPP. The mention of the video evidence, that was just made up. There was no video evidence corroborating Mr. Rushing's guilt. In fact, he tried to use it to show that it wasn't him. That was not proof of him. And the mentions of Mr. Green, while he ID'd this person, he was 100 percent sure this is the same guy who changed the description three times, effectively described a different person, and was high at the time. Your Honor, we also have the jury instruction argument, which I wasn't able to get to. If the Court would indulge me for one minute. Please. Thank you. Our second basis for habeas relief is that the, is that under D1, the jury instructions were a loophole that allowed judgment of credibility by a preponderance of the evidence. That violates bedrock Supreme Court law that guilt has to be proven beyond a reasonable doubt. So here, the instructions allowed the jury to, one, find Rushing committed the foster shooting by a preponderance, and two, and critically, consider that evidence to determine Mr. Rushing's credibility. So if the jury found by a mere preponderance that he committed the uncharged shooting, it could find on that basis that he wasn't credible and committed the charged crime. But Counsel, don't we look at the jury instructions as a whole, and didn't the jury instructions as a whole contain the proper reasonable doubt, beyond a reasonable doubt instruction? They did, but the problem with that and the omission from all of the case law that the government cites is that none addressed an instruction that also allowed a jury to judge credibility by a preponderance. The jury needed to be instructed that it can't find Rushing guilty based on a finding by a preponderance that he committed the prior crime and, therefore, is not credible. So you're on D1 with that issue. On that issue. Do you have a Supreme Court case that says that an instruction that discusses uncharged conduct under preponderance of the evidence relieves the government of its burden of proof? Do you have a case that says that? No. My Supreme Court authority is Sullivan, and it's Prodigy that requires reasonable doubt. We understand your argument. Thank you, Counsel. Thank you very much, Your Honor. Thank you to both Counselors. The case just argued is submitted for decision by the Court.
judges: GOULD, RAWLINSON, BRESS